UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

THOIP (a Chorion Limited Company),

    Plaintiff,

- against -

THE WALT DISNEY COMPANY,

    Defendant.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/20/09

MEMORANDUM
OPINION AND ORDER

08 Civ. 6823 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

    Plaintiff THOIP moved to disqualify Pasquale A. Razzano from representing defendant The Walt Disney Company ("TWDC") in this trademark infringement action. This motion is now moot as TWDC voluntarily retained substitute counsel, O'Melveny & Myers, and consented to the withdrawal of Razzano and his law firm, Fitzpatrick, Cella, Harper & Scinto. However, pursuant to 28 U.S.C. § 1927 and this Court's inherent powers, THOIP seeks attorney's fees and costs incurred in connection with its motion for disqualification. For the following reasons, I find that Razzano and his firm are responsible for THOIP's fees and costs, in an amount to be determined after this Court reviews the relevant time sheets and attorney affidavits.

## I.  BACKGROUND

### A.  Corporate Structure

Razzano's conflict of interest arises from his existing attorney-client relationship with both THOIP's parent company, Chorion Limited ("Chorion"), and THOIP's affiliate, The Copyrights Group Ltd. ("Copyrights Group"). THOIP is a wholly-owned subsidiary of Chorion which, in turn, is a wholly-owned subsidiary of Planet Acquisitions Holdings Limited ("PAHL").[1] Copyrights Group is another wholly-owned subsidiary of PAHL,[2] thus making THOIP and Copyrights Group sister corporations. Although separate corporate entities, the operations of Chorion, THOIP and Copyrights Group are completely integrated. For example, Chorion's legal department also supervises the legal affairs of THOIP and Copyrights Group.[3]

### B.  Copyrights Group's Intellectual Property Rights

Copyrights Group is the licensing agent and exclusive licensor of trademark, copyright and other rights for merchandise relating to various famous

---

[1]  *See* 11/21/08 Declaration of Robert Crossley, Director of Legal and Business Affairs for Chorion ("Crossley Decl."), ¶¶ 2-3.

[2]  *See id.* ¶ 4.

[3]  *See id.* ¶ 5.

2

literary properties.[4] With respect to most of the properties represented, Copyrights Group has the right to: (1) negotiate and grant licenses to manufacturers and others for the use of the represented properties; (2) maintain the artistic integrity of the properties; and (3) develop strategies to increase merchandising income from the properties on a long-term basis.[5] Copyrights Group also has the right to develop and maintain a trademark program for the protection of the represented properties.[6] In return for these services, Copyrights Group retains a substantial portion of the royalties generated by the licenses.[7]

### C.     Razzano's Representation of Copyrights Group

For many years, Razzano has provided various legal services, including trademark prosecution and litigation, for Copyrights Group and its licensed properties.[8] Razzano is aware that Copyrights Group's legal department is fully integrated with those of Chorion and THOIP.[9] Razzano represents

---

[4]     *See id.* ¶ 6.

[5]     *See id.*

[6]     *See id.*

[7]     *See id.*

[8]     *See id.* ¶ 10.

[9]     *See* 11/20/08 Declaration of David Llewellyn, counsel in Chorion's Legal and Business Affairs Department ("Llewellyn Decl."), ¶ 3 ("I am employed

Copyrights Group with respect to trademarks directly owned by Copyrights Group as well as trademarks for which Copyrights Group is the exclusive agent and licensor.[10] Razzano has consistently sent invoices to Copyrights Group for his services and has accepted payments from Chorion for those services.[11] In fact, Razzano's law firm has coordinated directly with Chorion's accounting department to secure payment for services rendered.[12]

The same Chorion attorneys who work with THOIP's outside counsel in this litigation also work with Razzano in connection with his trademark work for Copyrights Group.[13] In this capacity, these attorneys have shared sensitive information and business strategies with Razzano.[14] For example, David Llewellyn, an attorney in Chorion's Legal Department, disclosed various legal and business strategies used by Chorion, including trademark registration and

---

by Chorion, but my responsibilities include providing legal services for various of Chorion's subsidiaries and affiliates, including THOIP and . . . []Copyrights Group[].").

[10]   *See id.* ¶¶ 5, 7.

[11]   *See id.* ¶ 4.

[12]   *See id.* ¶ 7.

[13]   *See* Crossley Decl. ¶ 14.

[14]   *See id.*

licensing strategies, to Razzano.[15]  These strategies are not specific to Chorion but are also employed by other PAHL companies, including THOIP.[16]  Thus, there is the legitimate concern that Razzano's knowledge of Chorion's legal and business strategies could be used againt THOIP to TWDC's advantage in the instant litigation.

### D. Razzano's Representation of TWDC

On November 6, 2008, THOIP's counsel in this action (Moses & Singer) forwarded to Llewellyn TWDC's first document request, which was signed by Razzano.[17]  The next day, Llewellyn informed Moses & Singer that Razzano currently represents Chorion and Copyrights Group in connection with various trademark matters.[18]  Moses & Singer sent Razzano a letter, dated November 7, 2008, advising him of the conflict and demanding that he cease representing TWDC.[19]  The Director of Legal & Business Affairs for Chorion,

---

[15]  *See* Llewellyn Decl. ¶ 13.

[16]  *See id.*

[17]  *See id.* ¶ 14.

[18]  *See id.*

[19]  *See* 11/7/08 Letter from Paul M. Fakler to Razzano, Ex. 1 to the Declaration of Paul Fakler ("Fakler Decl."), a partner at Moses & Singer, at 2 ("Now that Chorion has placed you on actual notice of the conflict and its refusal to waive, we expect that you will promptly withdraw your representation of

Robert Crossley, also sent Razzano a letter dated November 7, 2008, protesting his representation of TWDC.[20] Crossley's letter admonishes Razzano as follows:

> We are suprised that your firm has accepted to act for Disney in this matter. We are also puzzled that your conflict searches did not discover that THOIP is a Chorion company, particularly given your personal knowledge of Chorion and the fact that the amended complaint clearly states that THOIP is a Chorion Limited company.[21]

Razzano responded to both Crossley and Moses & Singer with a letter dated November 11, 2008.[22] In that letter, Razzano refused to acknowledge any conflict of interest. He claimed that Copyrights Group was not his client and that his firm's "actual clients" were the nominal owners of the trademarks for which Copyrights Group is the exclusive licensing agent.[23]

> I was asked, through Copyrights, to do similar types of trademark work for Paddington & Co. in connection with the Paddington Bear character. As with my representation with [Frederick Warne & Co.], here Paddington & Co., the

---

Disney in this matter.").

[20]   See 11/7/08 Letter from Crossley to Razzano, Ex. 1 to the Crossley Decl. ("We have been advised by Moses & Singer that your firm has a clear conflict of interest in acting for Disney. We have not granted your firm a waiver to act on Disney's behalf and neither will we grant such a request if it is sought.").

[21]   Id.

[22]   See Ex. 2 to the Crossley Decl.

[23]   See id. at 2.

> owner of the marks was the client, not Copyrights.
>
> Recently, of course, Copyrights was acquired by Chorion. Since then I have continued to interact with representatives of Chorion as I had in the past with Copyrights, *i.e.*, Chorion was simply the licensing agent for two companies, Warne and Paddington, who were this firm's actual clients. . . . I did not then and do not now consider Chorion a client of our firm and have had no contact with THOIP or its intellectual property. Nor have I received any confidential information of Chorion or of THOIP, as a result of that or any other contacts.[24]

Razzano thus disavowed ever representing Copyrights Group in connection with any trademarks owned by Copyrights Group.[25]

Paul Fakler, a partner at Moses & Singer, pressed the issue further when he verbally confronted Razzano with the fact that Razzano had indeed represented Copyrights Group in connection with its own trademark.[26] After investigating his representation of Copyrights Group, Razzano admitted that he represented Copyrights Group in connection with at least two trademark registrations.[27] Despite this admission, Razzano claimed that his representation of

---

[24]   *Id.*

[25]   *See* Fakler Decl. ¶ 2.

[26]   *See id.* ¶ 3.

[27]   *See* 11/12/08 e-mail from Razzano to Fakler, Ex. 1 to the Fakler Decl.

Copyrights Group ended when its most recent registration issued in 2003.[28] Razzano's latest position is belied by Razzano's letter to Llewellyn, dated August 6, 2008, notifying Llewellyn that the Copyrights Group's Logo Registration was coming up for renewal in January 2009.[29] In that letter, Razzano offers to prepare the necessary paperwork on behalf of Copyrights Group.[30]

### E. The Pre-Motion Conference

A telephonic court conference was scheduled for November 17, 2008, to address the conflict of interest issue raised by THOIP. In advance of that conference, and pursuant to my Individual Rules, THOIP's counsel submitted a pre-motion letter to this Court and sent a copy to Razzano. THOIP's pre-motion letter, which is dated November 14, 2008, sets forth the relevant facts and governing law in support of its motion to disqualify Razzano from representing TWDC. The letter is detailed and quite persuasive.

---

[28] *See* Fakler Decl. ¶ 4. *See also id.*, Ex. 1 ("We do not appear to have done any substantive work directly for Copyrights, as a client, since the last of these two registrations issued and certainly not since Copyrights was acquired by Chorion.").

[29] *See* 8/6/08 Letter from Razzano to Llewellyn, Ex. 4 to the Llewellyn Decl.

[30] *See id.* ("Please let me know if this mark is still in use and whether you want to file the Declaration of Use to keep it in effect. . . . I will then prepare the necessary Declaration.").

On November 17, 2008, after hearing both parties' positions on the disqualification issue,[31] I urged Razzano to voluntarily withdraw in light of the obvious conflict of interest. An expedited briefing schedule was set at plaintiff's request, with moving papers due Friday, November 21, 2008.[32] I instructed Razzano that if he decided to voluntarily withdraw, he should notify THOIP as soon as possible so that it would not have prepare and file unnecessary motion papers.[33] Razzano stated that he would discuss the matter with TWDC as soon as possible and anticipated having an answer the next day, Tuesday, November 18, 2008.

THOIP did not receive any word from Razzano or TWDC that Tuesday.[34] Accordingly, THOIP's attorneys began working on the motion and continued working through the week.[35] THOIP filed its motion papers at approximately 1:00 p.m. on Friday, November 21, 2008.[36] Unbeknownst to

---

[31] Razzano and Fakler were both on the call.

[32] *See* Reply Declaration of Paul Fakler ¶ 2.

[33] *See id.*

[34] *See id.* ¶ 3.

[35] *See id.* ¶ 4.

[36] *See id.* ¶ 6.

Fakler, however, Razzano had left him a voicemail at 10:12 a.m. that Friday.[37] In his message, Razzano informed Fakler that TWDC had decided to retain new counsel but he did not know which of several attorneys TWDC would select.[38] Fakler did not get this message until after the motion papers were filed.[39] Thus, Razzano's eleventh hour notice failed to timely resolve the issue and avoid the current fee request.

## II. LEGAL STANDARD

THOIP bases its fee request on 28 U.S.C. § 1927 ("section 1927"), entitled "Counsel's liability for excessive costs," which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[40]

The Second Circuit has interpreted section 1927 as authorizing the imposition of

---

[37] *See id.*

[38] *See id.*

[39] Given the time difference with London, THOIP's motion had to be susbstantially finished by Thursday evening. *See id.* ¶ 4. Accordingly, it would have made little difference if Fakler received Razzano's message at the time it was sent.

[40] 28 U.S.C. § 1927.

sanctions only "when there is a finding of conduct constituting or akin to bad faith."[41]  In other words, sanctions under section 1927 are warranted "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."[42]

In addition to the statutory authority under section 1927, this Court also has the inherent power to impose attorney's fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . [or] if a court finds that a fraud has been practiced upon it."[43]  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[44]  This inherent power "serv[es] the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's

---

[41]   *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997).

[42]   *In re 60 East 80th Street Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (quoting *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quotation marks omitted)).

[43]   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quotation marks and citation omitted).

[44]   *Id.* at 43 (quotation marks and citation omitted).

obstinancy."[45]

## III. DISCUSSION

Here, Razzano was put on notice of the conflict of interest as early as November 7, 2008, when Fakler sent him a letter demanding his withdrawal as TWDC'c counsel. In response, Razzano sent THOIP and its counsel a letter dated November 11, 2008, in which he states:

> When Disney first contacted us about the THOIP action, we saw Chorion's name on the complaint and advised Disney of the above facts. Members of our Management Committee also considered whether there would be a conflict and concluded that since Chorion is not our client and, like us, is simply providing professional services to common clients, there is no conflict because our common clients are not involved in this lawsuit. We stand by that conclusion.[46]

THOIP's counsel dispelled Razzano's erroneous point of view in its painstakingly detailed pre-motion letter. If this were not enough, at the pre-motion conference, I personally encouraged Razzano to voluntarily withdraw and to do so promptly. Although Razzano initially anticipated having an answer the next day, Tuesday, November 18, 2008, he waited until Friday, November 21, 2008, the date the motion was due, to inform THOIP's counsel that he was withdrawing.

---

[45] *Id.* at 46 (quotation marks and citation omitted).

[46] Ex. 2 to the Crossley Decl. at 2.

Razzano immediately reported the results of the pre-motion conference to in-house counsel for TWDC.[47] According to Razzano, TWDC thereafter took their discussion under advisement and began to identify and retain new counsel.[48] Although TWDC may not have known which new attorney it would hire, there is no doubt that both Razzano and TWDC knew that Razzano would withdraw well before the filing date of THOIP's motion.[49] Under these circumstances, Razzano was obligated to either inform THOIP of his intention to withdraw or request that the motion be adjourned. Razzano's decision to withhold information of his withdrawal from THOIP until the actual filing date is inexplicable. This unwarranted behavior, in direct contravention of this Court's instructions, was undertaken in bad faith and requires an award of attorney's fees.[50] Such award is made pursuant to section 1927 and, alternatively, this

---

[47]    See 11/28/08 Declaration of Pasquale A. Razzano ¶ 5.

[48]    See id. ¶ 7.

[49]    See id. ¶ 6 ("I suggested, and we discussed whether, in view of the parties' expressed desire to try to resolve the case expeditiously through mediation with Magistrate Judge Gorenstein, it would be better for both parties for me to withdraw and TWDC select new counsel.").

[50]    See, e.g., Life Fitness, Inc. v. Sears, Roebuck and Co., No. 88 C 263, 1988 WL 37835, at * 2 (N.D. Ill. Apr. 21, 1988) (finding plaintiff's law firm liable for defendant's attorney's fees pursuant to section 1927 where law firm initially refused to withdraw, forcing defendant to file a motion for disqualification, and then voluntarily withdrew after defendant's counsel spent over fifty hours

Court's inherent power.[51]

The amount of such award, however, cannot yet be determined. Plaintiff's counsel is hereby directed to submit, by January 26, 2009, the relevant time sheets and attorney affidavits. Because Razzano and his firm are liable for any amount awarded,[52] they may oppose plaintiff's submission by January 30, 2009. The Clerk of the Court is directed to close this motion (Document # 11).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 20, 2009

---

preparing and filing the motion).

[51] The standard for awarding fees under section 1927 and the Court's inherent power is the same. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

[52] TWDC is not liable for any fees awarded. *See United States v. International Bhd. of Teamsters, Chauffeurs, Warhousemen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("[A]wards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards.").

14

## - Appearances -

**For Plaintiff:**

Paul M. Fakler, Esq.
Moses & Singer LLP
405 Lexington Avenue
New York, NY 10174
(212) 554-7800

**For Defendant:**

Dale M. Cendali, Esq.
OMelveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

**Former Counsel:**

Pasquale A. Razzano, Esq.
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112
(212) 218-2100